## Century Indemnity Company v. Williams & Bradley.

(Decided December 18, 1931.)

COLEMAN & LANCASTER for appellant.

C. B. COX for appellees.

OPINION OF THE COURT BY JUDGE REES.—Affirming.

Appellant, the Century Indemnity Company, issued to appellees a mercantile safe burglary policy, by the terms of which it agreed to indemnify the insured for all loss from the felonious extraction of property from their safe, where the person taking the property entered the safe by actual force and violence. While the policy

was in force, the safe was burglarized, and $566.61 in money, and jewelry of the value of $115 were taken. Appellant refused to pay the amount of the loss on the ground that no visible marks had been made upon the outer doors or walls of the safe by tools, explosives, electricity, gas, or other chemicals while such safe was duly closed and locked, which was one of the conditions of the policy prerequisite to a recovery. Appellees brought this action to recover the sum of $731.61, which included the value of the property taken and the damages to the building. They recovered a judgment for $681.61, and the insurance company has appealed.

Clause 1 of the policy reads:

"Indemnity for Loss. To indemnify the assured for all loss by burglary of any such property from within that part of any safe or vault to which the insurance under this policy applies, occasioned by any person or persons making felonious entry into such safe or vault by actual force and violence of which force and violence there shall be visible marks made upon the outer doors or walls of such safe or vault by tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed, and locked by at least one combination or time lock and located in the assured's premises as hereinafter defined, or while located elsewhere after removal therefrom by burglars."

Clause 2 reads as follows:

"Indemnity for Damage. To indemnify the Assured for all direct damage (except by fire) to such safe or vault and all property therein, and to all furniture, fixtures and other property in the premises (except plate glass or lettering or ornamentation thereon) caused by such burglary or attempt thereat; and also for all such damage (except by fire) to the premises, provided the Assured is the owner thereof or is liable for such damage."

Under the heading of "Exclusions," the policy contains the following provisions:

"The company shall not be liable for loss or damage . . . effected by opening the door of any

vault, safe or chest by the use of a key or by the manipulation of any lock; under Indemnity Paragraph two unless there shall be visible marks made upon such safe and/or vault by tools, explosives, electricity, gas or other chemicals showing conclusively that an attempt to make a felonious entry into such safe and/or vault as provided for by the terms of Indemnity Paragraph one of this policy, has been made."

Appellant's principal contention is that there was no evidence authorizing a submission of the case to the jury, and that the court erred in overruling its motion for a directed verdict.

Appellees' store was entered in the nighttime in August, 1930, the safe covered by the policy opened, and $566.61 in money and a lot of jewelry abstracted therefrom. The burglars entered the building through the basement after the lock on the basement door had been removed. They cut a hole through the first floor, and thus entered that part of the building in which the safe was located. It is not contended that the safe was not entered and the property therein stolen, but it is appellant's theory that appellees had carelessly left the safe unlocked, and that the burglars opened the door of the safe without actual force or violence, and that there is no evidence tending to show there were visible marks made upon the outer doors and walls of the safe by tools, explosives, electricity, gas, or other chemicals.

C. H. Bradley testified that it was his custom to close the doors of the safe and turn the combination each afternoon when he left the store, and that he did so on the afternoon before the burglary. A number of witnesses testified as to the condition of the safe immediately after it was discovered that the burglary had been committed. A fresh mark was found on the outer door of the safe which appeared to have been produced by a file. There were stains on the floor under the combination of the safe which were apparently produced by a chemical. The filling of the door, which was plaster of Paris, was cracked in several places around the lock. These cracks appeared to be fresh. One or two witnesses observed discolored places on the door apparently caused by explosives. The combination could not be operated the morning after the burglary, although it is admitted that

it has not been repaired and the safe was being used at the time of the trial, but the appellees claim that the combination is operated with difficulty.

The only witness introduced by appellant was J. H. Campbell, an experienced locksmith, who examined the safe shortly after the burglary. He testified that he could discover no evidence of force or violence, and that in his opinion no explosive had been used. The facts disclosed by the evidence introduced by the plaintiffs, however, were sufficient to take the case to the jury on this question and to sustain its verdict.

It is also contended that the court erred in giving instructions Nos. 1, 2, and 3 and in failing to give instructions A and B offered by appellant. We have examined the instructions given by the court, and find that they embody appellant's theory of the case as set out in the instructions offered by it.

The judgment is affirmed.